NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

E–SYSTEMS, INC., ECI Division,
Respondent.

No. 79–3486.

United States Court of Appeals,
Fifth Circuit.
Unit B

April 8, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, Howard E. Perlstein, Atty., N. L. R. B., Washington, D. C., for petitioner.

Shackleford, Farrier, Stallings & Evans, Harrison C. Thompson, Jr., Thomas M. Gonzalez, Lucius M. Dyal, Jr., Tampa, Fla., for respondent.

Before GODBOLD, Chief Judge, TUTTLE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The National Labor Relations Board (NLRB) found that the ECI Division of E-Systems, Inc. (E-Systems) violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3) (1976), by refusing to place on a preferential rehire list and eventually discharging four economic strikers who had engaged, E-Systems believed, in strike misconduct. The NLRB ordered E-Systems to rescind its termination of the four strikers' recall rights, to offer immediate and full reemployment to those strikers who would have been recalled had their recall rights not been terminated, to pay their lost wages, and to post appropriate notice concerning this disposition of the dispute. *E-Systems, Inc., ECI Division*, 244 N.L.R.B. No. 36 (Aug. 15, 1979). E-Systems, seeking judicial review, has refused to obey the order. Thus the NLRB petitions for enforcement. We have decided to enforce the order insofar as it concerns two of the employees, but to deny enforcement insofar as it concerns the remaining two.

## The Strike

The United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, (Union) represents the production and maintenance employees at E-Systems' St. Petersburg, Florida plant. The Union, seeking agreement on the terms of a new collective bargaining contract, called for a strike. There is evidence in the record indicating that the ambience at the plant during this economic strike, which ·began on February 7, 1978, was tense.[1] Over two months later, on April 11, accord was reached and the strike ended. A "settlement agreement" provided, *inter alia*, that the strikers be placed on a preferential rehire list. Four days earlier, however, E-Systems informed the Union that a number of striking employees would not be included on that list because, E-Systems maintained, those employees had engaged in strike misconduct. On April 13, E-Systems formally discharged them.

This appeal concerns four of the discharged strikers: John Ferguson, William Chapman, Edwina L. Russ, and Antoinette Rhoads. The administrative law judge (ALJ) found, and the NLRB agreed, that the discharge of these employees was a violation of the Act.

### Judicial Review of the NLRB's Conclusions

■ Both statutory and case law circumscribe our factual review of the NLRB's

---

1. During the administrative hearing concerning the allegations leading to this litigation, the administrative law judge (ALJ) properly narrowed the issue to whether the discharged employees had engaged in strike misconduct, not whether the strike itself was violent. Nevertheless, we think some consideration must be given to the context in which the events precipitating the discharges took place. *See generally N. L. R. B. v. Moore Business Forms, Inc.*, 574 F.2d 835 (5th Cir. 1978).

conclusions: we are to determine only if those conclusions are supported by substantial evidence on the record as a whole.[2] Thus, "[i]f the evidence before the Board is conflicting, and the Board's decision rests on credibility, then we are bound by the credibility choice." *N. L. R. B. v. Moore Business Forms, Inc.*, 574 F.2d 835, 843 (5th Cir. 1978). The issue is not whether this court, confronted by the same evidence, would have come to different factual conclusions, but whether substantial evidence[3] supports the factual conclusions of the NLRB.

There is, however, a purpose to this appellate review. This court is not so constrained that we must uncritically accept the NLRB's order. As we have explained, "[i]f ... the credibility choice is based on an inadequate reason, or no reason at all, we are not compelled to respect it, and shall not do so.' Obviously, if the order is based on an invalid legal reason it will not be enforced." *Id.* With this in mind, we turn to cases of the discharged strikers before us.

### John Ferguson

■ Melvin Frank Brown, an E-Systems employee who did not participate in the strike,[4] testified that he saw John Ferguson "shooting a slingshot towards the main entrance of the plant" during the strike. Record, Vol. II, at 135. Brown reported the incident to a security guard. On the basis of that report, E-Systems discharged Ferguson.

The evidence in the record concerning the incident, however, is conflicting. William J. Peterson, the personnel manager at the plant, testified somewhat vaguely that Brown reported "[s]omething to the effect that he [Brown] did observe him [Ferguson] attempting to load a slingshot." *Id.* at 80. Brown himself admitted that he could not state whether there was anything in the slingshot when Ferguson allegedly shot. *Id.* at 137. Ferguson, on the other hand, denied having or discharging a slingshot at the plant. *Id.* at 156–57.

The ALJ, finding Ferguson "a most truthful and forthright witness," concluded "that he did not engage in the act of strike misconduct of which he was accused ...." *See id.*, Vol. I, a 304 (Decision of the Administrative Law Judge). The ALJ accordingly concluded that E-Systems had violated the Act by discharging Ferguson. The NLRB adopted this conclusion and added that E-Systems had further violated the Act by not including Ferguson on a preferential rehire list.

■ These findings and conclusions are not based on inadequate reason and they are supported by substantial evidence. Thus we will not disturb them. We want to emphasize, however, that there is nothing in the record suggesting that E-Systems was not acting in good faith when it discharged Ferguson (or, not incidently, any of the strikers before us). Substantial evidence, reading the record as a whole, does support the conclusion that Ferguson did not engage in strike misconduct, but there is also evidence supporting E-Systems' alle-

---

**2.** "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e) (1976). *See Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

**3.** "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N. L. R. B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). However, this court is not

> to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn .... The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement ... that courts consider the whole record.

*Universal Camera Corp. v. N. L. R. B.*, 340 U.S. at 487–88, 71 S.Ct. at 463–64.

**4.** Brown was employed as a design engineer and as such was not included in the bargaining unit.

gation that he did. Nevertheless, it is clear that an employer's good faith belief that he is acting lawfully is not a defense to an unfair labor practice charge:

§ 8(a)(1) is violated if an employee is discharged for misconduct arising out of a protected activity, despite the employer's good faith, when it is shown that the misconduct never occurred .... In sum, § 8(a)(1) is violated if it is shown that the discharged employee was at the time engaged in a protected activity, that the employer knew it was such, that the basis of the discharge was an alleged act of misconduct in the course of that activity and that the employee was not, in fact, guilty of that misconduct.

*N. L. R. B. v. Burnup & Sims*, 379 U.S. 21, 23, 85 S.Ct. 171, 172, 13 L.Ed.2d 1 (1964) (citations omitted).[5]

Thus we enforce the order of the NLRB insofar as it concerns Ferguson.

*William Chapman*

■ Rocky Rothwell, another non-striking E-Systems employee,[6] reported that the side of his truck was scratched while he was passing through the picket line. Rothwell identified William Chapman as the picketing employee who scratched his truck; Rothwell testified that Chapman "stuck his umbrella in the right-rear quarter panel of my truck and scratched it." Record, Vol. II, at 142. Chapman did not deny that he had scratched Rothwell's truck. Rather, he testified that if he did, he did so unintentionally. He explained that it was cold, raining and windy the day of the incident and that at the time Rothwell's truck passed by him his "umbrella turned inside out because of the wind. I lowered it and adjusted it ... and the truck passed and I

proceeded to picket." *Id.*, Vol. III, at 204–05. Later Rothwell and Chapman appeared at a voluntary proceeding before a citizen's dispute settlement board. Chapman agreed to make restitution in the amount of $36.92; he testified he did so in order to keep his "involvement in the strike to a minimum." *Id.* at 206.

The ALJ concluded, and the NLRB agreed, that Chapman had misconducted himself during the strike, but that the misconduct was accidental in nature and thus not sufficiently serious to disqualify him for employment. *See id.*, Vol. I, at 305–06 (Decision of the Administrative Law Judge). Although we are not comfortable with the ALJ's labeling of accidental conduct as misconduct, we do accept his legal appraisal of the incident and find that the conclusion that E-Systems did not have good cause to discharge Chapman is supported by substantial evidence. Thus, we enforce the order of the NLRB insofar as it concerns Chapman.

*Edwina L. Russ*

■ Peterson, the personnel manager, testified "[t]he basis of [Edwina L. Russ'] termination was destruction of property and tearing of an aerial off of a vendor's car as he was leaving the vicinity. This was reported to us by the vendor." *Id.*, Vol. II, at 61. Robert J. Braher, an employee of the vendor,[7] witnessed the incident. Braher was following the vendor in another car as both left the plant through the main gate. He saw a picket, whom he later identified as Russ, bend the aerial. The aerial was rendered unusable. *Id.*, Vol. III, at 183, 196.

Russ testified that, as the cars approached the gate, she and the other pickets

---

**5.** We note the line of cases decided in this circuit in which it has been held that section 8(a)(1) or (3) is not violated when an employer discharges an employee for good cause, unless it is proved that the discharge was motivated by antiunion animus. *See, e. g., Florida Steel Corp. v. N. L. R. B.*, 587 F.2d 735 (5th Cir. 1979); *Firestone Tire & Rubber v. N. L. R. B.*, 449 F.2d 511 (5th Cir. 1971). These cases must be distinguished from the one before us. Al-

though E-Systems' discharge of Ferguson was in good faith, the ALJ properly found that there was not good cause for the discharge.

**6.** Rothwell, like Brown, was neither covered by the collective bargaining contract nor employed in a managerial capacity.

**7.** Neither the vendor nor Braher were employed by E-Systems.

stepped aside to allow passage. As they did so, according to her testimony, the "car speeded up . . . to get out on the street, and as it did it brushed me and I . . . it hit me and as it hit me my hand reached up and I just happened to grab that antenna and I bent it." *Id.* at 218. She explained that "[i]t was just a reflex, and I was angry, I guess, because he was trying to get out in a hurry and he did brush me as he went out." *Id.* at 219–20. Criminal action based on this incident was later instituted against Russ. She pleaded *nolo contendere* to a criminal mischief charge, agreed to make restitution in the amount of $146 to the vendor, and was put on probation for three months. *Id.* at 224–25.

The ALJ concluded, and again the NLRB agreed, that Russ' behavior was reflexive and provoked, and thus not sufficiently serious to warrant her discharge. We agree insofar as substantial evidence indicates that Russ' behavior was impulsive, but we disagree that such impulsive, uncontrolled behavior is protected by the Act. Therefore we reject the ALJ's legal appraisal of the incident and do not enforce the order of the NLRB insofar as it concerns Russ. *See N. L. R. B. v. Moore Business Forms, Inc.,* 374 F.2d at 844 (Nelda Morrow).

### Antoinette Rhoads

Two incidents led to the discharge of Antoinette Rhoads. Evidence in the record indicates that she blocked passage of automobiles at the plant while picketing and that she hit another E-Systems employee who had abandoned the strike and was returning to work. Peterson, the personnel manager, testified that on March 7, 1978, he was informed that strikers at the plant's main gate were preventing automobiles from leaving the plant. He observed the incident, noting that one of the strikers was Rhoads, and called the police. The police spoke to the pickets and the blocked automobiles were driven out through the gate. Record, Vol. II, at 32–33. The driver of one of the blocked cars, an E-Systems employee named Deloras Lees, who had joined the strike initially but later opted to return to work, testified that her egress was prevented partly by the pickets and partly by a stalled car; she further testified that Rhoads was not in the picket line during the entire incident, but that Rhoads replaced one of the pickets who had initially blocked the cars. *Id.* at 99–100. The testimony of another driver buttresses this testimony. *Id.* at 120–21. Both drivers, however, testified that Rhoads prevented their passage.

The following morning, pickets, again including Rhoads, prevented some cars from entering the plant. Peterson testified that when he came to work he noticed two cars, one of which was driven by Lees, in the plant's main gate driveway. Rhoads again was not initially on the picket line, but she later joined it and blocked the passage of one car "by standing in front of it; [the pickets] were not walking, as pickets had been directed to walk." *Id.* at 35. The pickets directed other cars around the ones stopped in the driveway. Management personnel eventually escorted the drivers of the blocked cars into the plant. *Id.* at 37–39. Lees' testimony echoes Peterson's, *id.* at 100–102, as does that of another driver, *id.* at 121–23.

Rhoads herself testified that, while picketing the gates, she and other pickets "moved back and forth from one end of the driveway to the other" and that she did not stop "in front of [Lees'] car" but was "walking in front of [Lees'] car." *Id.* at 235–36. Rhoads admitted, however, that on the morning of March 8 she in fact stood in front of Lees' car, thus blocking its passage for some fifteen minutes. *Id.* at 239.

The second incident occurred the morning of March 8, while Lees was being escorted from her car and into the plant by a managerial employee. Lees testified that as she passed Rhoads, she "felt something hit me, and I winced and turned my head . . . . I saw [Rhoads'] hand coming down—her arm coming down." *Id.* at 103. Lees later felt some stiffness in her shoulder, so she reported to the plant nurse, who discovered a bruise. Rhoads testified that, at the time Lees passed her, she carried a piece of

string in her hand and that she "threw [her] arm out and shook [her] hand and hollered 'Scab!'" *Id.* at 245. She further testified that she did not intend to hit Lees and, to the best of her knowledge did not do so. *Id.* Another picket's testimony concurs with Rhoads' description of the incident. *Id.* at 280. No one testified that he had in fact seen Rhoads strike Lees.[8]

The ALJ concluded "that the operative course of the Rhoads discharge was, solely, Respondent's belief that that employee had assaulted Lees." *See id.,* Vol. I, at 307 (Decision of the Administrative Law Judge). Thus the ALJ discounted the car blocking incidents.[9] He did find that the evidence warranted the inference that Rhoads struck Lees and thus that Rhoads had engaged in strike misconduct. He concluded, however, that the incident was not so serious that it required a forfeiture of her reemployment. The NLRB agreed.

We agree that substantial evidence indicates that Rhoads engaged in strike misconduct. That evidence, however, indicates that Rhoads misconducted herself both by blocking the passage of employees going to and from work and by striking Lees. We will not condone such conduct. *See Mosher Steel Co. v. N. L. R. B.,* 568 F.2d 436 (5th Cir. 1978). Enforcement of the order insofar as it concerns Rhoads is therefore denied.

Enforcement GRANTED in part and DENIED in part.

---

**8.** It is worth mentioning that E-Systems filmed much of the strike activity. We have not viewed the films, but they apparently reveal that Rhoads did have string in her hand and that she did throw her arm out toward Lees; they do not prove that Rhoads struck Lees.

**9.** The NLRB, however, disagreed with the ALJ's conclusion that the traffic blocking incidents were not an operative cause of Rhoad's dismissal. "Nevertheless," the NLRB maintained, "even assuming without deciding that Rhoads engaged in such conduct, we do not believe that such conduct, whether considered alone or with Rhoads' other conduct described above, was sufficiently serious to deny her the protection of Sec. 8(a)(3) of the Act." *E-Systems, Inc. v. ECI Division,* 244 NLRB No. 36, at 2, n.1.