782 F.2d 839
 121 L.R.R.M. (BNA) 2804, 54 USLW 2495,
104 Lab.Cas. P 11,798
 GENERAL TEAMSTERS LOCAL NO. 162, INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS
OF AMERICA, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Western Pacific Construction Materials Co., Intervenor-Respondent.
 No. 85-7196.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 7, 1986.
Decided Feb. 11, 1986.
 
 Kulongoski, Durham, Drummonds & Colombo, Theodore R. Kulongoski, Monica A. Smith, Portland, Or., for petitioner.
 Linda Dreeben, Mark S. McCarthy, Attys., N.L.R.B., Washington, D.C., for respondent.
 Josephine B. Vestal, Robert I. Betts, Franklin L. Dennis, Williams, Lanza, Kastner & Gibbs, Seattle, Wash., for intervenor-respondent.
 Appeal from the National Labor Relations Board.
 Before SKOPIL, NELSON and BOOCHEVER, Circuit Judges.
 BOOCHEVER, Circuit Judge.
 
 
 1
 The General Teamsters Local No. 162, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the Union") appeals from a final decision of the National Labor Relations Board ("NLRB" or "the Board") which (1) dismissed an unfair labor practice charge under sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("the Act" or "NLRA"), 29 U.S.C. Secs. 158(a)(1) and 158(a)(3) (1982),[1] against a company that discharged a striking employee for engaging in serious strike misconduct, and (2) found that although the company's discharge of a second employee was unlawful, the employee engaged in such serious strike misconduct that it would not advance the remedial purpose of the Act to award him reinstatement or backpay. We have jurisdiction under 29 U.S.C. Sec. 160(f), and affirm.
 
 OVERVIEW
 
 2
 Western-Pacific Construction Materials Co. ("the Company") is an Oregon building materials supply company that operates six cement mixing yards in and around Portland. The Teamsters Local 162 is the exclusive bargaining representative for a unit of the Company's employees and had a collective bargaining agreement with the Company. On May 16, 1983, the Union commenced an economic strike against the Company. The Union maintained picket lines at all Company sites and utilized ambulatory picketers who followed Company trucks and picketed the trucks at construction sites. The strike ended on June 21. During the course of the strike, the Company discharged several Union members, including Joel Johnson and Harry Jump, for alleged strike misconduct. The Union filed unfair labor practice charges contesting the discharges. It now contends that there was no substantial evidence to support Johnson's discharge and that the Board abused its discretion in refusing to order Jump's reinstatement or to award him backpay.
 
 
 3
 I. Does Substantial Evidence Support Johnson's Discharge?
 
 A. Facts
 
 4
 Joel Johnson, a Company truck driver, went on strike with other employees on May 16. On May 27, Johnson approached Company Security Guard Kennedy at the front gate to the Company's downtown site, and after asking Kennedy whether he had a flak jacket, stated that the "IRA are not the only people who can buy hand grenades, and that [Kennedy] had better get a flak jacket." At other times on the picket line, Johnson carried a baseball bat and a toy pistol resembling a real gun, spit at vehicles, and cursed and threatened employees as they crossed the picket line. Security Guard Kennedy observed and reported these incidents.
 
 
 5
 On June 8, Kennedy observed that Johnson was present at the Company's city center site. Johnson moved away from a small group of picketers, picked up some rocks, and then ran behind a nearby building as a car approached the front gate where Kennedy was stationed. As the car slowed, Kennedy observed a hand from behind the building throw a rock the size of a baseball; the rock dented the car's door. Johnson then peeked out from behind the building, and subsequently left the picket site. The other picketers remained. Kennedy observed this incident, called the police, and later filed an incident report identifying Johnson as the striker who threw the rock. On the basis of this report, the Company discharged Johnson on June 13.
 
 
 6
 The Union filed an unfair labor practice charge with the NLRB on June 24, 1983. The NLRB on October 31, 1983 issued a complaint charging the Company with violations of sections 8(a)(1) and 8(a)(3) of the Act for discharging Johnson. On May 24, 1984, the ALJ issued a decision which found that the Company's discharge of Johnson for strike misconduct was lawful and dismissed the complaint. On appeal, the NLRB agreed with the ALJ that the Company lawfully discharged Johnson for engaging in serious strike misconduct by throwing a rock that struck and damaged the car of a nonstriking employee. The Board dismissed the complaint with respect to Johnson.
 
 B. Analysis
 1. General Principles
 
 7
 Striking employees who engage in serious picket line misconduct forfeit the protection of the Act and may be discharged for such conduct. NLRB v. Fansteel Metallurgical Corp., 306 U.S. 240, 252-55, 59 S.Ct. 490, 494-96, 83 L.Ed. 627 (1939); Schreiber Manufacturing, Inc. v. NLRB, 725 F.2d 413, 415 (6th Cir.1984). Where it is alleged that an employer violated the Act by discharging a striking employee, the General Counsel must establish a prima facie violation of the Act by showing that the employer discharged the employee because of conduct that occurred in the course of the economic strike. General Telephone Co. of Michigan, 251 NLRB 737, 738 (1980), aff'd without opinion sub nom. Local 1106, IBEW v. NLRB, 672 F.2d 895 (D.C.Cir.1981). The employer may defend the discharge on the ground that it had "an honest belief that the employee disciplined was guilty of strike misconduct of a serious nature" and that the discharge decision was based on that misconduct. Id. Once an employer establishes an "honest belief" defense, the General Counsel must then affirmatively show that the employee did not in fact engage in such conduct. Schreiber Manufacturing, Inc., 725 F.2d at 415-16; General Telephone, 251 NLRB at 738-39; see also NLRB v. Burnup & Sims, Inc., 379 U.S. 21, 23 n. 3, 85 S.Ct. 171, 172 n. 3, 13 L.Ed.2d 1 (1964). The General Counsel must prove the necessary elements of the alleged unfair labor practice by a preponderance of the testimony. See section 10(c) of the NLRA, 28 U.S.C. Sec. 160(c);[2] see also NLRB v. Transportation Management Corp., 462 U.S. 393, 395, 103 S.Ct. 2469, 2471, 76 L.Ed.2d 667 (1983).
 
 2. Standard of Review
 
 8
 The Board's determination that the National Labor Relations Act has or has not been violated should be affirmed if its findings of fact are supported by substantial evidence on the record as a whole, 29 U.S.C. Sec. 160(f), and if the Board correctly applied the law. Carpenters Union Local No. 25 v. NLRB, 769 F.2d 574, 579 (9th Cir.1985). See Universal Camera Corp. v. NLRB, 340 U.S. 474, 485-90, 71 S.Ct. 456, 463-66, 95 L.Ed. 456 (1951). The Board's interpretation and application of the Act is entitled to considerable deference. Carpenters, 769 F.2d at 579. Upon review of a decision of the NLRB, this court gives "special weight" to the credibility determinations made by the administrative law judge, and the Board's findings are not to be disturbed unless a clear preponderance of all the evidence convinces the court that the findings are incorrect. Id.
 
 3. Discussion
 
 9
 Because the Company showed that it had a good faith belief that Johnson threw the rock, the General Counsel had the burden of proving by a preponderance of the evidence that Johnson did not in fact engage in the misconduct for which he was discharged. The Union argues that the General Counsel met that burden of proof by affirmatively showing that Johnson did not throw the rock. The Union asserts that it would have been physically impossible for Johnson to have thrown the rock, given the placement of the building and the car, and the angle from which the rock was thrown. The Union contends that only a left-handed thrower could have hit the car, and Johnson is right-handed. The ALJ found that the angles of vision were not shown with sufficient detail to support that contention.
 
 
 10
 The Union also contends that the ALJ failed to consider all relevant factors in assessing Security Guard Kennedy's credibility. Kennedy's report concluded that Johnson threw the rock, while Kennedy testified only that he saw the rock thrown by a hand that he believed was Johnson's. The Union asserts that this discrepancy shows that Kennedy's report misstated and exaggerated what he had seen, and concludes that Kennedy's identification of Johnson was unreliable.
 
 
 11
 The ALJ found that the Company had an "honest belief" that Johnson threw the rock based on Kennedy's report, and that the General Counsel failed to show affirmatively that Johnson did not throw the rock. The ALJ specifically stated that "[t]he testimony of Kennedy is credited." Kennedy "unwaiveringly" identified Johnson at the site picking up rocks and ducking behind the building. Kennedy saw the hand he believed was Johnson's throw the rock, and then saw Johnson peek from behind the building. Johnson then left the site. "Contrasted to this detailed description of events by Kennedy, Johnson, based on demeanor, lack of candor, and inherent inconsistency in his testimony, was not a credible witness." Johnson claimed to have carried the baseball bat for a cane, but would have had to stoop to use it as such, and in any event, admitted carrying it over his shoulder. He admitted spitting at drivers, but said that the reason was that it was "dry and dirty."
 
 
 12
 This court has recognized that the administrative law judge "is in the best position to evaluate which witness is recalling the facts most accurately, and the [reviewing c]ourt cannot conduct a de novo review of the testimony to make different credibility determinations." NLRB v. Anchorage Times Publishing Co., 637 F.2d 1359, 1364 (9th Cir.), cert. denied, 454 U.S. 835, 102 S.Ct. 137, 70 L.Ed.2d 115 (1981). We find that substantial evidence on the record as a whole supports the ALJ's conclusion that Johnson threw the rock.
 
 
 13
 The Union alternatively argues that if Johnson threw the rock, the incident does not constitute misconduct sufficient to justify discharge. The Union is mistaken. The Board and the courts have consistently held that throwing objects at moving vehicles constitutes serious strike misconduct for which employees may be discharged. See, e.g., NLRB v. Moore Business Forms, Inc., 574 F.2d 835, 844 (5th Cir.1978) (egg); NLRB v. Otsego Ski Club-Hidden Valley, Inc., 542 F.2d 18, 19 (6th Cir.1976) (egg); PBA, Inc., 270 NLRB 998, 998-99 (1984) (rock). The Union's contention is without merit. We affirm the NLRB's holding that Johnson was lawfully discharged.
 
 
 14
 II. Did the NLRB Abuse Its Discretion in Refusing to Order Reinstatement or Backpay for Jump?
 
 
 15
 A. Facts.
 
 
 16
 On May 18, 1983, Harry Jump, a shop steward, was an ambulatory picketer who followed a Company readymix cement truck to a construction site. He was accompanied by two other picketers. While the cement truck was stopped at an intersection, two picketers jumped from Jump's vehicle. One ran to the door of the cement truck and threatened the driver, and the other discharged four yards of cement onto the street. The driver of the cement truck identified Jump as one of the participants and identified Jump's vehicle. Jump was arrested, and the Company discharged him the same day.
 
 
 17
 On July 18, Jump was identified as having been involved in running a car driven by Randy Gravelle off the road on May 16. Gravelle was a strike replacement employee. After Jump pulled his car in front of Gravelle's, preventing his escape, Jump and another striker pulled Gravelle from his car, physically assaulting and threatening him. Gravelle was intimidated into joining another striker who drove with him to a parking lot, where Jump again attempted to pull Gravelle from the car. The next day Gravelle reported this incident to the Company. Subsequently, Gravelle identified two of the strikers from Company photos on June 20th, and he identified Jump on July 18th.
 
 
 18
 During the unfair labor practice charge hearing, the ALJ found that the Company had an "honest belief" that Jump was guilty of the strike misconduct for which he was fired, but that the General Counsel established that Jump did not participate in the misconduct. It was undisputed that Jump remained in the vehicle and did not participate or encourage the other strikers in dumping the cement. He did not try to stop them. The police charges were dropped on July 22 for lack of evidence. The ALJ further found, however, that Jump's misconduct in assaulting Gravelle was sufficiently serious to preclude his reinstatement or backpay. The ALJ held that the Company did not violate sections 8(a)(1) and 8(a)(3) by discharging Jump, and dismissed the complaint.
 
 
 19
 On appeal, the NLRB disagreed with the ALJ's conclusion of law as to Jump and held that the Company did violate sections 8(a)(1) and 8(a)(3) by discharging Jump for misconduct in which he was not involved.[3] The Board, however, found that Jump "committed egregious acts of strike misconduct" in forcing a nonstriking employee's car off the road and physically accosting and threatening the nonstriker. The Board held that it "would not advance the remedial purposes of the Act" to require the Company to reinstate Jump or pay him backpay. The Board ordered the Company to cease and desist from discharging employees engaged in protected strike activities, and required the Company to post an appropriate notice.
 
 B. Analysis
 1. General Principles
 
 20
 The Board's remedial authority is set forth in section 10(c) of the Act, 29 U.S.C. Sec. 160(c), which provides that the Board shall order a violator "to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of [the Act]." Although reinstatement and backpay are the conventional remedies ordered to redress an unlawful discharge, the Board may withhold such remedies where they would not effectuate the purpose of the Act. Golden Day Schools, Inc. v. NLRB, 644 F.2d 834, 840 (9th Cir.1981); NLRB v. Western Clinical Laboratory, Inc., 571 F.2d 457, 460 (9th Cir.1978); 29 U.S.C. Sec. 160(c).
 
 2. Standard of Review
 
 21
 The Board's discretion in the selection of appropriate remedies is exceedingly broad and is to be given special respect by reviewing courts. NLRB v. Gissel Packing Co., 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939 n. 32, 23 L.Ed.2d 547 (1969); Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 215-16, 85 S.Ct. 398, 405-06, 13 L.Ed.2d 233 (1964); NLRB v. Fort Vancouver Plywood Co., 604 F.2d 596, 602 (9th Cir.1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). Conversely, a reviewing court's scope of review of the Board's remedial orders is narrow. The Board's choice of remedies will not be disturbed on review in the absence of a clear abuse of discretion. See Virginia Electric & Power Co. v. NLRB, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943); cf. United Steelworkers of America v. NLRB, 646 F.2d 616, 629 (D.C.Cir.1981) ("the administrative expertise of the Board in fashioning remedies, derived from its unique understanding of the complex relationship between labor and management in our industrial society and the policies incorporated in the labor laws, is not to be interfered with lightly by reviewing courts lacking that expertise"); NLRB v. Western Clinical Laboratory, Inc., 571 F.2d at 461 ("discretionary power of reinstatement subject to limited judicial review").
 
 3. Discussion
 
 22
 The Union contends that the Board's inquiry should have been whether reinstatement would have created "an unacceptable employment relationship" thereby frustrating the policies of the NLRA. The Union then argues that Jump should be reinstated because two other striking employees who were involved in the Gravelle incident were reinstated by the Company after the strike, thus showing that reinstatement would not create an unacceptable relationship. The Union also disputes the ALJ's findings as arbitrary and inconsistent.
 
 
 23
 The Union's contentions do not recognize the Board's broad discretion and the deference owed the ALJ's findings of fact. The correct standard is whether the Board abused its discretion in selecting a remedy.
 
 
 24
 The ALJ accepted the testimony of the Company's general manager that Scott (one of the employees involved in the Gravelle incident) was not fired because Scott was not involved in the actual physical violence, and that the general manager was not satisfied with Gravelle's identification of Scott. The ALJ also credited Gravelle's testimony based upon demeanor, candor, inherent probability, consistency, and his ability to testify in detail without embellishment or apparent rancor. Further, the ALJ found that the record showed that two of the three known participants were not reinstated. In any event, neither the involvement of the other strikers participating in the Gravelle incident nor the Company's decision to reinstate them were issues that were before the Board.
 
 
 25
 The Board found that "Jump committed egregious acts of strike misconduct" by running a nonstriking employee's car off the road and twice physically assaulting and threatening him. Acts such as these have been consistently recognized as constituting serious misconduct for which the courts will refuse to order reinstatement. See NLRB v. E-Systems, Inc., 642 F.2d 118, 121-22 (5th Cir.1981) (striking employee bent car radio antenna); NLRB v. Moore Business Forms, Inc., 574 F.2d 835, 843-44 (5th Cir.1978) (striking employee swerved in front of and blocked another employee's car; second employee threw egg); Ohio Power Co. v. NLRB, 539 F.2d 575, 578 (6th Cir.1976) (striking employee intentionally bumped employee, knocking him to ground); NLRB v. Fibers International Corp., 439 F.2d 1311, 1312-14 (1st Cir.1971) (striking employee intimidated nonstriking employee).
 
 
 26
 Alternatively, the Union argues that even if Jump should not be reinstated, he should receive backpay from the time of his unlawful discharge (May 20) until the time when the Company first discovered his involvement in the Gravelle incident (July 18). The Union contends that the Board failed to consider whether backpay as a remedy distinct from reinstatement would effectuate the policies of the Act.
 
 
 27
 In refusing to order reinstatement or backpay, the Board places on Jump the burden for his own serious strike misconduct, and informs other employees that they cannot with impunity engage in the type of misconduct in which Jump participated. The Board, in the exercise of its discretion and expertise, issued a cease and desist order and affirmatively required the Company to post a notice that it would not engage in unlawful misconduct. We hold that the Board did not abuse its discretion in refusing to order reinstatement or award backpay. The decision of the NLRB is AFFIRMED.
 
 
 
 [1]
 Section 8(a)(1) provides that it shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed under section 157 of title 29 U.S.C. Section 8(a)(3) makes it an unfair labor practice to discourage or encourage membership in any labor organization by discriminating with respect to hire or tenure of employment. 29 U.S.C. Secs. 8(a)(1) and 8(a)(3)
 
 
 [2]
 As amended in 1978, but not yet noted in U.S.C. See section 3 of Pub.L. 95-251, March 27, 1978, 92 Stat. 184; 29 U.S.C.A. Sec. 160(c) (West Supp.1985)
 
 
 [3]
 The Board's conclusion that Jump's discharge violated the Act has not been appealed