NORTHPORT HEALTH SERVICES, INC., d/b/a Estes Nursing Facility—Oak Knoll, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.

No. 91–7163.

United States Court of Appeals, Eleventh Circuit.

June 5, 1992.

J. Frederick Ingram, F.A. Flowers, Sue A. Willis, Burr & Forman, Birmingham, Ala., for petitioner.

Aileen A. Armstrong, David Seid, Linda J. Dreeben, N.L.R.B., Washington, D.C., Howard Trimble, N.L.R.B., Martin M. Arlook, Regional Director, Region 10, Atlanta, Ga., for respondent-cross-petitioner.

Before KRAVITCH, ANDERSON and BIRCH, Circuit Judges.

BIRCH, Circuit Judge:

In late January 1988, petitioner Northport Health Services, Inc., d/b/a Estes Nursing Facility—Oak Knoll (the "Company"), discharged eight of its second floor nursing assistants. Our review of the record indicates that there were two possible motives for the Company's action. First, the Company may have unlawfully discharged the nurses because of their activity on behalf of the United Steelworkers of America, AFL–CIO–CLC (the "Union"). Second, the Company may have legitimately fired the nurses for their alleged participation in the removal of several call light bulbs [1] from patients' rooms during a periodic medicare and medicaid inspection by the state of Alabama.

Our review of the record also establishes that this is a very close case. In spite of this fact, respondent and cross-petitioner National Labor Relations Board (the "Board") perfunctorily adopted the recommendations. of an administrative law judge (the "ALJ"), even though the ALJ utilized an erroneous legal standard, relied upon evidence that was not supported by the record, and failed to fully consider the relevant evidence tending to undermine the ALJ's position. Because under such circumstances we cannot properly review the Board's conclusion that the discharges were impermissible, we REMAND with instructions.

## I. THE RELEVANT FACTS FOR THIS APPEAL

Because our ultimate disposition of this appeal will be a remand, we do not here attempt to chronicle all of the facts involved in this case. Rather, for our purposes it is sufficient to note that the record supports both theories of the employer's motivation in this case. First, in support of the Board's position that the eight nurses were discharged because of their union activity, the record establishes that six of the discharged nurses were involved in the campaign to certify the Union. Although the dischargees were not union activists or leaders of the efforts to unionize, there is evidence that these nurses either signed union cards, or attended union meetings, or received union handbills. In addition, there is evidence that the management of the Company was aware of the nurses' union activities, and perhaps viewed all eight as union supporters. Further, by way of background, the Company campaigned generally against the Union and held anti-union meetings with all employees. Most significantly, the discharges of the eight nurses came just two weeks before the Board-conducted election for certification of the Union. The Union lost by three votes.

The evidence supporting the Company's position that it discharged the nurses for a legitimate reason is also strong. On January 19, 1988, the state of Alabama began a scheduled inspection of the Company's Oak Knoll facility. During the course of this review, numerous call light bulbs, perhaps as many as thirteen, disappeared from patients' rooms on the second floor.[2] The Company had never experienced such an extensive problem with missing bulbs. The record reflects that the eight discharged second floor nursing assistants worked the time shifts during which the missing bulbs were discovered. Further, the record also indicates that various dischargees were either responsible for the rooms that were missing light bulbs, or were responsible for reporting the missing light bulbs and failed to do so. Viewing the problem as a serious one—both because management believed that patients were endangered by the missing bulbs and because management viewed

---

1. Call light bulbs are rubber, ball-like devices used by the patients to indicate that they are in need of assistance. When patients squeeze the call light bulbs, lights outside their rooms are illuminated, notifying the staff.

2. There is evidence that one of the bulbs was burned off its cord with a cigarette.

the taking of the bulbs during a state inspection to be an act of sabotage—the Company conducted an investigation. Afterwards, the Company discharged the eight second floor nursing assistants because it believed them to be the most likely culprits.

As we previously indicated, both theories of the Company's motivation in this case are plausible. Each theory has some support in the record, and each theory is undermined by other relevant evidence. Under such circumstances, it was particularly important that the Board carefully adhere to the governing legal standards and carefully recite the factual bases for its conclusions.

## II. THE LEGAL STANDARDS

■ If the petitioner discharged the nurses because of their union activity, the Company would be in violation of sections 8(a)(3) and 8(a)(1) of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 158(a)(3), (a)(1) (1988). However, discharges of employees are often matters of mixed motivation. For such cases, this circuit has adopted the guidelines established by the Board in *Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980), *enforced*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982):

> [*Wright Line*] mandates three phases of proof. First, the General Counsel must show by a preponderance of the evidence that a protected activity was a motivating factor in the employer's decision to discharge an employee. Such a showing establishes a section 8(a)(3) violation unless the employer can show as an affirmative defense that it would have discharged the employee for a legitimate reason regardless of the protected activity. The General Counsel may then offer evidence that the employer's proffered "legitimate" explanation is pretextual—that the reason either did not exist or was not in fact relied upon—and thereby conclusively restore the inference of unlawful motivation.

*NLRB v. United Sanitation Serv.*, 737 F.2d 936, 939 (11th Cir.1984). For each

motivation determination made by the Board—whether or not protected activity was the motivating factor in the discharge decision, whether or not the employer showed it would have legitimately discharged the employee regardless of union activity, and whether or not that showing is pretextual—we review the record in totality to determine if the conclusion is supported by substantial evidence. *Id.* at 938–40; *see also NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401–05, 103 S.Ct. 2469, 2474–76, 76 L.Ed.2d 667 (1983) (affirming the *Wright Line* test).

■ In examining the record for substantial evidence, this court is not a mere rubber stamp of the Board. *See, e.g., Bickerstaff Clay Prods. Co. v. NLRB*, 871 F.2d 980, 984 (11th Cir.), *cert. denied*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989). Rather, we are obligated to ensure that the Board's decisions are supported by substantial evidence. 29 U.S.C. §§ 160(e), (f) (1988). Thus, the Board cannot rest its conclusions on a scintilla of evidence or even on any amount of evidence that is less than substantial. Instead, the Board's order can be enforced only if we find in the record " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ Of course, the Board may not base its decision on facts that are not supported by the record. Further, the Board cannot ignore the relevant evidence that detracts from its findings. *Id.* at 487–88, 71 S.Ct. at 464–65. When the Board misconstrues or fails to consider important evidence, its conclusions are less likely to rest upon substantial evidence. *See Lord & Taylor v. NLRB*, 703 F.2d 163, 169 (5th Cir.1983). With these legal standards in mind, we turn to the findings of the ALJ and the order of the Board.

## III. THE ALJ'S FINDINGS

After the discharges, the Board filed an unfair labor practices complaint against the

Company. A hearing was conducted before the ALJ in May 1988. Over a year and a half later, in December 1989, the ALJ issued his decision, sustaining portions of the Board's complaint and dismissing other allegations.[3] With respect to the subject matter of petitioner's appeal, the ALJ determined that the Company's discharges of the nurses were in violation of the Act, and recommended an appropriate remedial order.

■ In finding the discharges to be unlawful, the ALJ utilized an erroneous legal standard. Although the ALJ cited *Wright Line*, a review of the ALJ's decision clearly indicates that he failed to understand its import. The ALJ proceeded on the belief that after the Board proved a prima facie violation of the Act, the Company "must go forward with its evidence of asserted reasons for each of the discharges. *If [the Company's] evidence sufficiently negates the presence of protected [union] activity in the [discharged nurses], General Counsel's prima facie case is rebutted and General Counsel has failed to substain [sic] his burden of proving discrimination."* R1–719 (emphasis added). This standard misstates the law. Under *Wright Line*, a company has no duty to "negate the presence" of union activity. In fact, a company can concede that it has discharged the most ardent union supporters and still avoid a violation of the Act, as long as the company establishes that those union supporters were fired for a reason other than their union activity.[4] In suggesting that the Company's evidence about the nurses' participation in the removal of the call light bulbs was important only in so far as that evidence negated the nurses' support of the Union, the ALJ adopted an incorrect legal standard.

The ALJ's error was compounded by the fact that there was no explicit discussion of the other two prongs of the *Wright Line* analysis—whether or not the Company proved that it would have discharged the nurses regardless of their union involvement and whether or not the Company's asserted reasons for the discharges were pretextual. In fact, in the one portion of the opinion that *does* allude to the second prong of *Wright Line*, the ALJ inaccurately describes the test by stating that "[i]f the discharges were motivated by antiunion design they are violative of the Act even though the employees may have performed misdeeds warranting termination." R1–727. Contrary to this description, *Wright Line* makes it clear that in mixed motivation cases, the decisionmaker may not attribute dispositive force to an employer's unlawful motivation. Instead, the critical inquiry becomes whether or not the employer's unlawful motivation fails to establish a violation of the Act because the employees' "misdeeds" were significant enough that the dischargees "would have lost [their] job[s] in any event." *Transportation Management*, 462 U.S. at 400, 103 S.Ct. at 2473. In missing this critical distinction as well as the entire thrust of the *Wright Line* analysis, the ALJ offered conclusions which may have followed from an erroneous legal standard.

■ In addition to misstating the governing law, the ALJ also relied upon evidence that was not supported by the record. Beyond the evidence of the nurses' union support, the ALJ was also heavily influenced by the fact that there were eleven nursing assistants that worked on the second floor. Evidently, the ALJ believed that the Company selected the eight dischargees because of their union involvement, but did not fire three other culpable

---

**3.** The Company has only challenged the findings regarding the discharges of the nursing assistants. The ALJ made other findings, which were also affirmed by the Board. For example, the complaint asserted that the Company engaged in various acts of illegal interrogation of employees. The ALJ sustained some of these allegations and dismissed others. These other findings are entitled to summary affirmance. *See United Sanitation*, 737 F.2d at 938 n. 1.

**4.** "[A]n employer, absent anti-union motivation, may discharge an employee for good reason, bad reason, or no reason without violating the labor law. Union membership is not a guarantee against discharge." *NLRB v. Southern Florida Hotel and Motel Ass'n*, 751 F.2d 1571, 1579 n. 11 (11th Cir.1985) (citation omitted).

second floor nursing assistants because those assistants supported the Company and not the Union. The ALJ concluded that this "selection process was subjectively unlawful." R1–728.

The ALJ's inference might be legitimate if it were supported by facts in the record. However, while our review of the record demonstrates that eleven nursing assistants may have worked at some time on the second floor, it does not disclose much else. The record does not indicate whether these other three nursing assistants were opposed to the Union, or even whether these other three nurses worked during the times that the bulbs were reported to be missing. In fact, the one reference in the record to a second floor nurse who was not fired suggests that this nurse was not disciplined with the other eight because she did not arrive until *after* management learned of the missing bulbs. *See* R2–150–51, 499–500. In contrast, the record indicates that the eight dischargees worked at least one of the times that bulbs were found to be missing. On this record, the ALJ's reliance upon the Company's putative "unlawful selection process" is not supported by substantial evidence.

The ALJ also erroneously represented the record in other instances. The ALJ suggested, without support in the record as a whole, that the bulbs were in fact not missing, that one nurse was fired without being questioned, and that a secret report about the eight nurses was made to management. In sum, although many of the ALJ's findings are supported by the record, some of the most important pieces of evidence are not.

■ Finally, the ALJ also failed to give a full and fair consideration to the Company's evidence tending to undermine the ALJ's position. Although the ALJ's opinion discusses the Company's reasoning for firing the eight nursing assistants, it does not expound the import of that evidence in light of the correct legal standard. The Company offered evidence showing that the dismissals were legitimate: a significant number of bulbs were taken during a state inspection; such missing light bulbs constituted a serious safety problem, especially if part of an effort to sabotage; the bulbs were only taken from second floor rooms; the dischargees were working the second floor during the relevant time periods; dischargees were responsible for the rooms in which bulbs were found to be missing; management attempted to investigate all potentially responsible parties; in discussions about disciplinary action, the nurses' union activities were not considered; in discharging the eight nurses, the Company believed it was eliminating the most likely culprits; and after the discharges the problem stopped.

Given that there was no overt evidence of the Company's intent and that the circumstantial evidence in this case was conflicting, the Company deserved an explanation from the ALJ as to why its proffer failed to meet the second prong of the *Wright Line* test. The ALJ provided none. In failing to accurately represent the entire body of evidence before him and in failing to apply a correct legal standard to the facts that he did consider, the ALJ rendered an opinion that was inadequate.

## IV. THE BOARD'S ORDER

■ The Board summarily affirmed the ALJ's findings and conclusions in a two-page boilerplate order. The only substantive discussion of the ALJ's errors occurs in footnote one of the order. In this footnote, the Board recognizes only one of the evidentiary errors made by the ALJ, states that the ALJ operated under an incorrect interpretation of *Wright Line*, recites the correct legal standard, and then readily concludes that it agrees with the ALJ "[f]or the numerous reasons stated by the [ALJ]." R1–800–01 n. 1.

Footnote one fails to cure the problems in the ALJ's opinion. Because the ALJ misstated the relevant legal standard, mischaracterized certain portions of the record, and did not grapple with all of the evidence before him, the "numerous reasons stated by the [ALJ]" are inherently suspect. If in footnote one the Board was attempting to perform independently the required *Wright Line* analysis, it should

have disavowed each reliance upon evidence that was not supported by the record, ensured that the body of evidence it was considering included the Company's proof tending to undermine the ALJ's position, and applied the correct legal standard to that body of evidence. Because the Board failed to do so, we find that the summary affirmance merely incorporates the errors in the ALJ's opinion. Thus, although this case has been pending for nearly four years, no decisionmaker has yet applied the required *Wright Line* standard to a full and accurate set of facts.

## V. THE APPROPRIATE RESOLUTION OF THIS CASE

We believe that we have three options in this case. First, we could perform the *Wright Line* analysis ourselves, reaching our own conclusion regarding the discharges of the eight nursing assistants. Second, we could deny enforcement of the Board's order outright, because the evidence is in such equipoise and the Board shoulders the ultimate burden of proving a violation of the Act. Finally, we could temporarily deny enforcement and remand the case so that the Board can properly analyze this case. We choose the last approach.

We reject the first resolution because it is not the proper function of this court to be performing correct *Wright Line* analyses in the first instance. Instead, the Board has the "primary *responsibility*" for striking an appropriate balance between permissible and impermissible employer motivations. *NLRB v. Malta Constr. Co.*, 806 F.2d 1009, 1010 (11th Cir. 1986) (emphasis added). Further, additional hearings may need to be held in order to complete the gaps in the present record. We reject the second method because we believe it to be somewhat unfair to let a company avoid an unfair labor practices charge on the basis of slipshod enforcement, especially when the evidence points to a potential labor violation. On the whole, we believe that the third approach is

the fairest under the circumstances. Accordingly, we REMAND with instructions.[5]

On remand, the Board must explicitly comply with *Wright Line*'s three phases of proof as outlined by this circuit in *United Sanitation Service*. First, the Board should determine, in light of all of the evidence fairly found in the record, including that evidence opposed to the ALJ's position, whether the General Counsel showed "by a preponderance of the evidence that a protected activity was a motivating factor in the [Company's] decision to discharge [the eight nursing assistants]." *See* 737 F.2d at 939. If the Board answers this first question in the affirmative, the Board must then determine whether or not the Company's evidence about the missing call light bulbs establishes "as an affirmative defense that [the Company] would have discharged the [nurses] ... regardless of the protected activity." *See id.* Finally, the Board may consider any evidence proffered by the General Counsel showing that the Company's explanation is pretextual in that the reason either did not exist or was not in fact relied upon. *See id.*

■ We remind the Board that a fully developed discussion of the facts, as well as the correct application of the governing legal standard to those facts, is essential to this court. This court may enforce the Board's order only on the basis of the reasoning within that order. *NLRB v. Episcopal Community*, 726 F.2d 1537, 1540–41 (11th Cir.1984). Moreover, only a thorough disposition by the Board enables this court to properly review a Board order to determine whether we can "conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465.

■ Although we may not override the Board's choice between two fairly conflicting views, *NLRB v. Southern Florida Hotel and Motel Ass'n*, 751 F.2d 1571, 1579 (11th Cir.1985), we may require that the

**5.** A similar remand was made in *United Sanitation Service. See* 737 F.2d at 939, 941.

Board's process of choosing be supported by articulate, cogent, and reliable analysis. In this case, we cannot be sure that such a process was followed. Accordingly, we decline to enforce that portion of the Board's order dealing with the discharges of the eight nursing assistants and remand for further proceedings consistent with this opinion.

REMANDED WITH INSTRUCTIONS.