[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-10372

_____

NLRB Case No. 12-17385 CA

NATIONAL LABOR RELATIONS BOARD,

Petitioner-Appellant,

versus

GIMROCK CONSTRUCTION, INCORPORATED,

Respondent-Appellee.

_____

Application for Enforcement of an Order of
the National Labor Relations Board

_____

**(April 20, 2001)**

Before BIRCH and BLACK, Circuit Judges, and NESBITT*, District Judge.**

BLACK, Circuit Judge:

---

\* Honorable Lenore C. Nesbitt, U.S. District Judge for the Southern District of Florida, sitting by designation.

\*\* Judge Nesbitt did not participate in this decision. This decision is rendered by a quorum. 28 U.S.C. § 46(d).

Petitioner National Labor Relations Board (the Board) seeks enforcement of its order against Respondent Gimrock Construction, Inc. *See* 326 N.L.R.B. No. 33 (1998). The Board concluded Respondent engaged in unfair labor practices affecting commerce, in violation of 29 U.S.C. §§ 158(a)(1)&(3), 152(6)&(7), during the course of a strike by members of the International Union of Operating Engineers, Local Union 487, AFL-CIO (the Union). In this enforcement action, Respondent claims: (1) the Union's strike had an illegal jurisdictional object in violation of 29 U.S.C. §§ 158(b)(4)(D), 187; (2) the Union failed to provide Respondent notice of an unconditional offer; and (3) since the Board ordered the strikers' reinstatement "upon application" and application was not made, Respondent is liable only for backpay that accrued after the Board clarified its order on July 27, 1999. Based on our conclusion that the Board did not adequately set forth its reasons in determining, contrary to the administrative law judge (ALJ), that the Union sought contractual coverage for both Union members and non-members, and, implicitly, that the Union's strike was legal, we temporarily deny enforcement and remand.[1]

## I. ADMINISTRATIVE PROCEEDINGS

---

[1] Since we remand for a thorough explanation of the Board's disposition of Respondent's first claim, we do not address Respondent's second and third claims. We also do not address Respondent's argument, as part of its first claim, that 29 U.S.C. § 187 applies here in lieu of 29 U.S.C. § 158(b)(4)(D), thereby removing the procedural bar pursuant to 29 U.S.C. § 160(k).

Following a hearing before ALJ Raymond P. Green on March 20-21, 1996, the ALJ issued a decision on May 31, 1996. The ALJ found the Union's bargaining position was that "any work traditionally assigned to oiler/drivers and mechanics [be] assigned *exclusively* to [Union] members." (Emphasis in original). The ALJ found that Respondent "wanted to keep its pre-election practice which allowed flexibility in assigning union *or* nonunion workers to the same types of jobs as needed." (Emphasis in original). According to the ALJ, this difference in positions was the "sticking point in the negotiations."

Despite these findings and his observation that strikers in violation of 29 U.S.C. § 158(b)(4)(D) may not be protected, the ALJ explained that a violation of § 158(b)(4)(D) can be alleged only after the grant of an administrative award pursuant to 29 U.S.C. § 160(k) and the Union's failure to comply with the award. The ALJ concluded that the absence of these circumstances bars a § 158(b)(4)(D) complaint against the Union.

Finding the strike economic, the ALJ next determined Respondent did not meet its burden of showing the Union members' offer to return to work was less than unconditional. On this basis, the ALJ concluded Respondent engaged in unfair labor practices, in violation of 29 U.S.C. §§ 158(a)(1)&(3), 152(6)&(7). The ALJ recommended that the Board order Respondent to offer the strikers

3

immediate and full reinstatement, dismiss the replacements if necessary, and compensate the workers for loss of wages and benefits.

On August 27, 1998, the Board issued its order. The Board affirmed the ALJ's findings and conclusions, and adopted the ALJ's recommended order, as modified. In footnote 1, however, the Board rejected the ALJ's determination that the Union was seeking to have all oiler and mechanic work assigned to Union members. The Board found merit in the Union's assertion, in its exceptions, that its bargaining position was that all oilers and mechanics — both Union members and non-members — should be provided with contractual wages and benefits. The Board noted the Union's argument that its asserted bargaining position comports with the Union's certification as the bargaining representative of "*all* equipment operators, oiler/drivers and equipment mechanics employed by Respondent in Dade and Monroe counties . . . ." (Emphasis added). According to the Union, this pool encompasses Union members and non-members. Also in footnote 1, the Board affirmed the ALJ's credibility findings.

## II. STANDARD OF REVIEW

We will affirm an order of the Board if its findings with respect to questions of fact are supported by substantial evidence on the record considered as a whole. *See* 29 U.S.C. § 160(e). "Substantial evidence is more than a mere scintilla. It

4

means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Florida Steel Corp. v. NLRB,* 587 F.2d 735, 745 (5th Cir. 1979) (citations and internal quotation marks omitted).[2]  This standard encompasses the requirement that the Board, as adjudicator, engage in reasoned decisionmaking. *See Allentown Mack Sales and Serv., Inc. v. NLRB,* 522 U.S. 359, 374, 118 S. Ct. 818, 826-27 (1998).  That is, "the process by which [the Board] reaches [a] result must be logical and rational."  *Id.,* 118 S. Ct. at 826.  This Court must "examine carefully both the Board's findings and its reasoning, to assure that the Board has considered the factors which are relevant" to its decision.  *Ona Corp. v. NLRB,* 729 F.2d 713, 719 (1984); *see also Allentown Mack,* 522 U.S. at 366-71, 378-80, 118 S. Ct. at 823-25, 829.  While this Court will not displace the Board's choice between two reasonable positions, *see Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S. Ct. 456, 465 (1951), this Court will not act as a mere enforcement arm of the Board.  *See BE&K Constr. Co. v. NLRB,* 133 F.3d 1372, 1375 (11th Cir. 1997) (citing *Ona,* 729 F.2d at 719).

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

## III.  DISCUSSION

We turn first to the Board's determination, contrary to that of the ALJ, that the Union did not seek to have all oiler and mechanic work assigned to its members, but, rather, that it sought contractual coverage for all employees, both Union members and non-members.  Whether to affirm the Board's conclusion that the strike did not have an illegal jurisdictional object is a threshold determination. The Board has concluded that strikers who participate in a strike that is illegal from its inception forfeit their rights to protection under the National Labor Relations Act.  *See Mackay Radio & Tel. Co.,* 96 N.L.R.B. 740, 742-43 (1951) (explaining that providing remedy for strikers participating in illegal strike would "encourag[e] . . . conduct subversive of the [National Labor Relations Act]").  We therefore must address the issue of the strike's legality before reaching questions related to Respondent's actions.

The issue of the strike's legality requires two initial inquiries.  The first question is whether the substantial evidence standard allows the Board both to adopt the ALJ's credibility findings and to reject the ALJ's determination that the Union sought to have all oiler and mechanic work assigned to Union members.  If so, then a second question arises:  whether the Board adequately explained its reasons for rejecting the ALJ's determination about the Union's bargaining

6

position.  An affirmative answer to this question would lead to our thorough examination of the evidence presented to determine if the Board's decision is, in fact, substantially supported by this evidence.

A.  Rejecting Determinations and Adopting Credibility Findings

Respondent argues that since the Board relied on the same facts as the ALJ and did not dispute the ALJ's credibility findings, the Board's rejection of the ALJ's determination of the Union's bargaining position is unsupported by substantial evidence as a matter of law.  Petitioner argues that, in rejecting the ALJ's determination, the Board merely drew reasonable and different inferences from generally undisputed evidence.  In so doing, the Board did not reverse the ALJ's credibility findings.

The cases cited by the parties illustrate the extent to which the Board must accept an ALJ's determinations upon affirming an ALJ's credibility findings.  In one case, the ALJ found a corporate negotiator raised the issue of striker discipline as a contractual proposal, but the union representative refused to discuss the issue.  *See Georgia Kraft Co., Woodkraft Division v. NLRB,* 696 F.2d 931, 935 (11th Cir. 1983), *vacated in part and remanded on other grounds,* 466 U.S. 901, 104 S. Ct. 1673 (1984).  The ALJ therefore concluded no agreement had been reached.  *See id.*  Upon its examination of the negotiators' testimony, however, the Board found

7

the corporate representative did not raise this issue and concluded an agreement had been reached. *See id.* This Court found the Board's decision was supported by substantial evidence, since the Board did not discredit the witnesses' testimony, but, instead, differed with the ALJ on overarching inferences drawn from largely undisputed evidence and based on "overall judgment." *See id.* at 936-37 (quoting *NLRB v. Florida Med. Ctr., Inc.,* 576 F.2d 666, 674 (5th Cir. 1978)). The Court concluded the Board's rejection of the ALJ's factual inferences did not detract from the substantiality of the evidence required to support the Board's decision. *See id.* at 937; *see also Nix v. NLRB,* 418 F.2d 1001, 1008 (5th Cir. 1969) (affirming Board's reversal of ALJ's conclusion that employee had been discharged because of union activity, since this conclusion is a factual inference).

In a contrasting case, evidence showed that a non-striker's motorcycle had been seriously damaged during the course of a strike. *See Mosher Steel Co. v. NLRB,* 568 F.2d 436, 439 (5th Cir. 1978). Although the ALJ credited the testimony of eyewitnesses who observed a striker kicking the motorcycle, the Board determined this testimony did not sufficiently support the conclusion that the striker had caused the damage to the motorcycle. *See id.* at 439-40. The Former Fifth Circuit rejected the Board's refusal to adopt the ALJ's conclusion. The Court held that if the Board relies on the same facts as the ALJ and does not

dispute the ALJ's credibility findings, then substantial evidence demands that the Board draw the same conclusion as the ALJ. *See id.* at 441. An ALJ is in a better position than the Board to make credibility findings. *See id.*

Our case involves factual inference drawing, not witness credibility findings, and is thus analogous to *Georgia Kraft.* Like the question of whether striker discipline was raised as a negotiable issue, whether the Union's bargaining position included exclusionary demands is not a straightforward, provable fact to which witnesses clearly testified. In both our case and *Georgia Kraft,* the Board drew overarching, quasi-legal inferences from facts. Significantly, in our case and in *Georgia Kraft,* the ALJ's credibility determinations could reasonably yield both the Board's inference and the ALJ's conflicting inference. In fact, Petitioner and Respondent each cite the testimony of both parties' witnesses to bolster their opposing arguments. *See infra* note 4. In *Mosher,* by contrast, accepting the witness' testimony leads to one conclusion, while rejecting the testimony leads to the opposite conclusion.

Based on our determination that the characterization of the Union's bargaining position is a factual inference, we conclude, as a matter of law under the substantial evidence standard, that the Board was permitted to reverse the ALJ on this issue. *See Nix,* 418 F.2d at 1008 ("[t]o differ with the [ALJ] on inferences and

9

conclusions to be drawn from the facts is the Board's prerogative") (citation omitted). The ALJ's contrary determination, however, is a part of the record that must be considered in assessing whether the evidence substantially supports the Board's decision. *Id.*

B. Reasoned Decisionmaking

Under the substantial evidence standard, this Court "may require that the Board's process of choosing [between conflicting views] be supported by articulate, cogent, and reliable analysis." *Northport Health Serv., Inc. v. NLRB,* 961 F.2d 1547, 1553 (11th Cir. 1992). "[O]nly a thorough disposition by the Board enables this court to properly review a Board order to determine whether we can 'conscientiously find that the evidence supporting that decision is substantial . . . .'" *Id.* (quoting *Universal Camera,* 340 U.S. at 488, 71 S. Ct. at 465); *see also Allentown Mack,* 522 U.S. at 374-75, 118 S. Ct. at 826-27; *cf. Motor Vehicle Mfrs. Assn., v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 52, 103 S. Ct. 2856, 2871 (1983) (requiring agency to offer rational connection between its factfinding and its regulatory decision under arbitrary and capricious standard). Finally, "[t]his Court may enforce the Board's order only on the basis of the reasoning within that order." *Northport,* 961 F.2d at 1553 (citing *NLRB v. Episcopal Community of St. Petersburg,* 726 F.2d, 1537, 1540-41 (11th Cir. 1984)).

Here, the Board summarily rejected the ALJ's characterization of the Union's bargaining position. The Board not only buried a crucial determination in a footnote, but, more importantly, it did not cite any evidence or give more than a skeletal explanation for its determination. That the Board "f[ou]nd merit" to the Union's exceptions simply does not suffice. While the Union's certification to represent "all" of the relevant employees may lend support to the Board's determination, this fact is certainly not dispositive. The Board did not adequately, if at all, explain its reasons for reversing the ALJ's determination of the Union's bargaining position. Our review of whether substantial evidence upholds the Board's decision requires the Board to set forth the evidence supporting its decision and to explain why this evidence outweighs the conflicting evidence. *See Northport,* 961 F.2d at 1550 (citing *Universal Camera,* 340 U.S. at 487-88, 71 S. Ct. at 464-65). While the Board may reject the ALJ's factual inferences, *see* Part III.A, the Board has an independent obligation to explain clearly its reasons for doing so. Since the Board has not provided us with any basis to begin our review of the record for substantial evidence, we decline to review the Board's determination that the Union's position was non-exclusionary until the Board explains its reasoning.

We have remanded in the past under strikingly similar facts. *See Northport Health Serv., Inc. v. NLRB,* 961 F.2d 1547 (11th Cir. 1992). In *Northport,* as in our case, the Board affirmed the ALJ's findings and conclusions, but summarily modified the ALJ's recommendations in a footnote.[3] Like *Northport,* ours is a close case. Both parties' positions are plausible, each position is supported by some evidence in the record, and each position is undermined by other evidence. *See id.* at 1549-50.[4] The *Northport* Court explained that, in a close case, it is critical that the Board carefully explain its reasons. *See id.* at 1550. The *Northport* Court's decision to deny enforcement temporarily and to remand the case — rather than to reach a conclusion independently or to deny enforcement of the Board's order outright — is equally appropriate in our case. *See id.* at 1553.

---

[3] While *Northport* involves legal errors, which are absent in our case, the balance of *Northport*'s analysis is squarely applicable to our case.

[4] Our preliminary review of the record reveals that both parties' positions find some support in the testimony of both parties' witnesses. For example, the Union's business manager testified, "But if the crane were to be transported or moved, we felt like that was bargaining unit work . . . ." This Union witness also testified, "I made it clear to [Respondent's counsel] that we had no objection to taking those people into the bargaining unit that they already had employed if there were some . . . ." Similarly, Respondent's counsel testified, "With respect to moving, assembling and dismantling the cranes, the union took the position . . . that only bargaining unit employees could perform that work." Respondent's counsel also testified that, at the May 25th meeting, the Union took the position that it "would be willing to . . . have [certain non-bargaining unit employees] treated as bargaining unit employees only for the period of time they were performing that kind of work."

## IV.  CONCLUSION

For the reasons set forth above, the Board's petition for enforcement is temporarily DENIED, and this matter is REMANDED for a thorough discussion of the evidence supporting the Board's determination of the Union's bargaining position and for a thorough explanation of the Board's reasons for discounting the conflicting evidence on this issue.

PETITION DENIED AND REMANDED WITH INSTRUCTIONS.