[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15033

_____

Agency No. 12-CA-072141

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

ALLIED MEDICAL TRANSPORT, INC.,

Respondent.

_____

Petition for Enforcement of an Order of the
National Labor Relations Board

_____

(October 13, 2015)

Before MARCUS, WILLIAM PRYOR, and JILL PRYOR, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This petition for enforcement presents two issues: whether substantial

evidence supports an order of the National Labor Relations Board and whether that

order is moot. After employees at Allied Medical Transport, Inc., elected a union

to represent them, Allied suspended and later discharged Renan Fertil and Yvel

Nicolas, two of the employees who supported the campaign to elect a union. The General Counsel for the Board then filed a complaint against Allied. The Board found that Allied illegally interfered with its employees' union activities, 29 U.S.C. § 158(a)(1), and unlawfully retaliated against Fertil and Nicolas, *id.* § 158(a)(3). The Board ordered Allied to refrain from future violations of the National Labor Relations Act, *id.* § 151 *et seq.*, and to reinstate Fertil and Nicolas with backpay. Because substantial evidence supports the findings of the Board and the petition for enforcement is not moot, we grant the petition for enforcement.

## I. BACKGROUND

Allied contracted with Broward County to provide paratransit services to individuals in the county. The county provided Allied with daily manifests of passenger transportation routes that specified which passengers were required to pay a $3.50 fare. When the drivers finished their daily routes, they deposited the fares into collection machines, which printed receipts. The drivers then stapled the receipts to their manifests and returned them to the company.

In August 2011, Allied conducted a limited audit comparing the daily manifests and the receipts of several drivers. The initial audit revealed that several drivers had not remitted all of their fares. Wayne Rowe, Allied's chief executive officer, reported the discrepancies to the drivers and required them to pay the amounts owed.

2

Two of the drivers, Jude Desir and Andrys Etienne, initially refused to pay Allied on the ground that they had remitted all of their collected fares to a supervisor. On October 21, 2011, Rowe told Desir and Etienne that he would investigate and that, if their explanation could not be verified, they would be responsible for paying any fares they owed. He did not discipline or suspend either employee during the investigation. Although Etienne insisted that he had deposited all of his fares, he later paid the missing amounts to keep his job. Rowe referred the investigation of Desir to the police, but Desir continued working for Allied.

In October 2011, the Transport Workers Union of America, American Federation of Labor and Congress of Industrial Organizations, filed a petition to represent the employees at Allied. Rowe interrogated employees about their union activities, instructed employees not to elect the union, told employees that the union could not help them, and encouraged employees to come to him with any grievance. When the union held a meeting at a hotel near one of Allied's locations, employees observed Rowe parked near the entrance.

Renan Fertil and Yvel Nicolas supported electing the union. Fertil and Nicolas solicited union cards, distributed union flyers, wore union T-shirts under their uniforms, and spoke at union meetings. Nicolas also served as an election observer. On December 2, 2011, the employees voted to have the union represent them.

3

Soon after the first audit, Allied started an audit of all of its employees' fare records from March to December 2011. Allied concluded that second audit several days after the union election. The second audit revealed that 77 of the approximately 120 drivers at Allied had fare delinquencies.

On December 13, 2011, Rowe called Nicolas to inform him that he had a fare delinquency. Nicolas explained that the fare collection machine often would not work and, in that event, he would place the fares in an envelope and deposit the envelope through a separate slot in the machine, described as similar to a mail slot. This alternative process did not produce a receipt. Nicolas told Rowe that he could verify the deposits by comparing the manifests to the amounts written on the front of the envelopes. Rowe responded that he could not verify the deposits that way and that he would further investigate the matter. Two weeks later, company officials met with Nicolas. They informed him that his delinquency totaled $226.50 plus interest and instructed him to pay Allied that amount. Nicolas again insisted that he had deposited all of the fares and requested copies of his manifests, but he nevertheless offered to pay the amounts to avoid suspension. Allied suspended Nicolas pending the outcome of the investigation.

On December 21, 2011, Rowe and other company officials spoke with Fertil and informed him that he owed $433 in delinquent fares, plus interest. Fertil asserted the same explanation as Nicolas, and he agreed to pay any amounts that

4

Rowe could substantiate with documentation. The company officials provided Fertil with the manifest from December 14, 2011, which disclosed a $7 shortage, and he agreed to pay that amount. Rowe told Fertil he would investigate the matter further. Allied suspended Fertil pending the outcome of the investigation.

Allied never investigated the validity of Nicolas and Fertil's explanation. Allied instead referred the matter to the local police department, which filed no charges against either employee. Allied fired Nicolas and Fertil. Allied later agreed to stop pursuing fare delinquencies against other employees pending negotiations with the union.

The General Counsel of the National Labor Relations Board filed a complaint against Allied for three violations of the National Labor Relations Act. First, the General Counsel alleged that Allied violated section 8(a)(1), which prohibits illegal interference with protected union activities. 29 U.S.C. § 158(a)(1). Second, the General Counsel alleged that Allied illegally retaliated against Nicolas and Fertil for their union activities, in violation of sections 8(a)(1) and (3). *Id.* § 158(a)(1), (3). Third, the General Counsel alleged that Allied violated sections 8(a)(1) and (5) by unlawfully changing its disciplinary policies regarding fare shortages without notifying the union. *Id.* § 158(a)(1), (5).

An administrative law judge ruled that Allied violated section 8(a)(1) by engaging in surveillance of the union and creating the impression of surveillance;

5

telling employees that it would be futile to select a union; interrogating employees about their union and other protected concerted activities; soliciting grievances to discourage the union campaign; soliciting employees to campaign against the union; promising employees benefits to discourage the union campaign; and threatening to replace employees with part-time drivers if they elected a union to represent them. The administrative law judge ruled that Allied did not illegally retaliate against Nicolas and Fertil. He stated that, "even if an invidious motivation might have played some role in Fertil's and Nicolas'[s] personnel actions, [Allied] would have nevertheless taken the same actions against them for permissible reasons," theft of passengers' fares. The administrative law judge ruled that Allied unlawfully changed its disciplinary policies without notifying the union, in violation of section 8(a)(5).

The Board affirmed the findings that the Company had committed several violations of section 8(a)(1) and ruled that Allied had committed an additional violation of section 8(a)(1) by instructing employees to vote against the union, but the Board reversed the other findings. It ruled that Allied retaliated against Nicolas and Fertil in violation of sections 8(a)(3) and (1). The Board explained that Allied failed to prove that it would have discharged Fertil and Nicolas in the absence of their union activities because Allied failed to conduct its promised investigation of Fertil's and Nicolas's explanations for the missing fares and treated two otherwise

6

similarly situated individuals, Desir and Etienne, differently. One member of the Board dissented as to the ruling on the retaliation charge on the ground that Allied would have suspended and discharged Fertil and Nicolas regardless of their union activities. The Board ruled that there was insufficient evidence to support the ruling that Allied violated sections 8(a)(5) and (1) by unilaterally changing its disciplinary policies about fare shortages.

The Board ordered Allied to remedy its violations of the Act. The order required Allied to, among other things, cease "[c]reating the impression that it is engaged in surveillance of its employees' union . . . activities"; "[s]uspending, discharging, or otherwise discriminating against employees because of their support for and activities on behalf of [unions]"; and "interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by . . . the Act." *Allied Med. Transp.*, 360 N.L.R.B. No. 142, at 6 (July 2, 2014). The order required Allied to post copies of a notice stating the requirements of the order in areas where its employees would see them. It also required Allied to offer Fertil and Nicolas "full reinstatement to their former jobs or, if those jobs no longer exist, to substantially equivalent positions" and to make Fertil and Nicolas "whole for any loss of earnings and other benefits suffered as a result of the discrimination against them." *Id.* The Board applied for enforcement of its order.

7

## II. STANDARD OF REVIEW

We will enforce an order of the Board if its factual findings "are supported by substantial evidence on the record considered as a whole." *NLRB v. Gimrock Constr., Inc.*, 247 F.3d 1307, 1309 (11th Cir. 2001) (citing 29 U.S.C. § 160(e)). "Substantial evidence is more than a mere scintilla of evidence. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *NLRB v. Contemporary Cars, Inc.*, 667 F.3d 1364, 1370 (11th Cir. 2012) (quoting *Bickerstaff Clay Prods. Co. v. NLRB*, 871 F.2d 980, 984 (11th Cir. 1989)). "We are even more deferential when reviewing the Board's conclusions regarding discriminatory motive, because most evidence of motive is circumstantial." *NLRB v. Goya Foods of Fla.*, 525 F.3d 1117, 1126 (11th Cir. 2008) (quoting *Vincent Indus. Plastics, Inc. v. NLRB*, 209 F.3d 727, 734 (D.C. Cir. 2000)) (internal quotation marks omitted). Our standard of review does not change when the Board reaches a conclusion different from that of the administrative law judge, *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496, 71 S. Ct. 456, 469 (1951), but the administrative law judge's conclusions are "one factor to be considered in determining whether this standard has been satisfied," *Parker v. Bowen*, 788 F.2d 1512, 1517 (11th Cir. 1986). "[C]ourts are bound by the credibility choices of the [administrative law judge]" unless they are "inherently unreasonable," "self-contradictory," or "based on an inadequate reason." *Goya*

8

*Foods of Fla.*, 525 F.3d at 1126 (quoting *Ona Corp. v. NLRB*, 729 F.2d 713, 719 (11th Cir. 1984)) (internal quotation marks omitted).

### III. DISCUSSION

Our discussion is divided in two parts. First, we explain that the enforcement order is not moot. Second, we explain that substantial evidence supports the finding of the Board that Allied discharged Fertil and Nicolas because of their union activities.

*A.  The Petition for Enforcement Is Not Moot.*

Allied argues that the petition for enforcement is moot in two ways. First, Allied contends that it is impossible to offer Fertil and Nicolas full reinstatement and backpay. Second, Allied argues that it has substantially complied with the remaining portions of the order to the extent possible. These arguments fail.

Allied contends that it is impossible to offer reinstatement and provide backpay because Allied has a much smaller workforce now, Fertil and Nicolas have not proved they are still certified to work as medical transport drivers, and the Board did not provide documentation of Fertil and Nicolas's interim income necessary to calculate backpay. "[A]n enforcement proceeding will become moot [if] a party can establish that 'there is no reasonable expectation that the wrong [remedied by an order] will be repeated.'" *NLRB v. Raytheon Co.*, 398 U.S. 25, 27, 90 S. Ct. 1547, 1549 (1970) (quoting *United States v. W. T. Grant Co.*, 345 U.S.

9

629, 633, 73 S. Ct. 894, 897 (1953)). An enforcement application does not become moot when the employer has difficulty complying with the order or when "changing circumstances indicate that the need for it may be less than when made." *NLRB v. Crompton-Highland Mills*, *Inc.*, 337 U.S. 217, 225 n.7, 69 S. Ct. 960, 964 n.7 (1949) (quoting *NLRB v. Pa. Greyhound Lines*, 303 U.S. 261, 271, 58 S. Ct. 571, 576 (1938)) (internal quotation mark omitted).

The provisions of the order that remedy the wrongful suspension and discharge of Fertil and Nicolas are not moot. An employer's defense of impossibility based on changes to the business does "not prevent[] courts from enforcing Board orders." *NLRB v. Castaways Mgmt., Inc.*, 870 F.2d 1539, 1543 (11th Cir. 1989) (quoting *NLRB v. Great W. Coca-Cola Bottling Co.*, 740 F.2d 398, 406 (5th Cir. 1984)) (ruling that the demolition of a motel did not prevent the business owners from complying with an order to compensate former employees with backpay); *see also Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106–07, 62 S. Ct. 452, 455–56 (1942) (ruling that dissolution of company and transfer of assets did not prevent enforcement of a Board order). Instead, the employer may "properly raise the impossibility defense in contempt proceedings." *Castaways Mgmt.*, 870 F.2d at 1543–44. If any modification to "the conventional remedy of reinstatement with backpay" is necessary, compliance proceedings offer the "appropriate forum." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 902, 104 S. Ct. 2803,

10

2814 (1984). Courts "have long recognized the Board's normal policy of modifying its general reinstatement and backpay remedy in subsequent compliance proceedings as a means of tailoring the remedy to suit the individual circumstances of each discriminatory discharge." *Id.*, 104 S. Ct. at 2814.

Allied's alleged substantial compliance with the remaining portions of the order also does not render these portions moot. An "employer's compliance with an order of the Board does not render the cause moot." *NLRB v. Mexia Textile Mills, Inc.*, 339 U.S. 563, 567, 70 S. Ct. 826, 828 (1950). "A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree." *Id.*, 70 S. Ct. at 829. The order imposes continuing obligations on Allied to remedy the illegal interference with the employees' union activities. Allied has not argued that there is "no reasonable expectation" that it will repeat its violations of the Act. *Raytheon Co.*, 398 U.S. at 27, 90 S. Ct. at 1549 (quoting *W. T. Grant Co.*, 345 U.S. at 633, 73 S. Ct. at 897). For these reasons, the petition for enforcement is not moot.

### B.  Substantial Evidence Supports the Order of the Board.

Section 8(a)(3) of the National Labor Relations Act prohibits employer "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). "An employer violates [that section] by taking adverse

11

employment action or changing the terms or conditions of employment in retaliation for the union activities of its employees." *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1421 (11th Cir. 1998). The Board ruled that Fertil and Nicolas were discharged in retaliation for their union activities.

Courts and the Board apply the *Wright Line* test to determine whether an employer violated section 8(a)(3). *See NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 400–04, 103 S. Ct. 2469, 2474–75 (1983), *abrogated in part on other grounds by Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 114 S. Ct. 2251 (1994); *Wright Line,* 251 N.L.R.B. 1083 (1980). Under *Wright Line*, the General Counsel of the Board establishes a section 8(a)(3) violation by proving, by a preponderance of the evidence, that the employer's antiunion animus was a "motivating factor" in its decision to discharge an employee. *McClain of Ga.*, 138 F.3d at 1424. An employer has an affirmative defense to section 8(a)(3) if it proves, by a preponderance of the evidence, *NLRB v. S. Fla. Hotel & Motel Ass'n*, 751 F.2d 1571, 1579 (11th Cir. 1985), "that it would have discharged the employee for a legitimate reason regardless of the protected activity," *McClain of Ga.*, 138 F.3d at 1424 (quoting *Northport Health Servs., Inc. v. NLRB*, 961 F.2d 1547, 1550 (11th Cir. 1992)). If the employer satisfies that burden, "[t]he General Counsel may then offer evidence that the employer's proffered 'legitimate' explanation is pretextual—that the reason either did not exist

12

or was not in fact relied upon—and thereby conclusively restore the inference of unlawful motivation." *Id.* (quoting *Northport Health Servs.*, 961 F.2d at 1550).

The Board concluded that the General Counsel proved that the employees' protected activity was a motivating factor for their discharge and that Allied failed to prove that it would have suspended and later discharged Fertil and Nicolas in the absence of their union activities. Allied challenges both findings. It contends that it fired Fertil and Nicolas for their theft and would have fired them regardless of their union activities.

Substantial evidence supports the finding of the Board that Fertil and Nicolas's support for the union was a motivating factor in the decision to fire them. Fertil and Nicolas both actively supported and participated in the campaign to elect a union. Allied knew that Fertil and Nicolas supported the union, and it suspended and discharged Fertil and Nicolas only weeks after the workers voted in favor of the union. *See McClain of Ga.*, 138 F.3d at 1424 (explaining that "the timing of the adverse action in relation to union activity" may "support an inference of anti-union motivation"). Rowe expressed antiunion animus when he told Nicolas that electing a union would be futile, threatened and interrogated other employees, and took other actions that illegally interfered with the employees' union activities in violation of section 8(a)(1). Violations of section 8(a)(1) may serve as circumstantial evidence of an employer's antiunion motivation. *See id.*; *Purolator*

*Armored, Inc. v. NLRB*, 764 F.2d 1423, 1429 (11th Cir. 1985). The Board reasonably accepted this evidence as sufficient to satisfy the General Counsel's initial burden.

Substantial evidence also supports the finding that Allied would not have suspended and discharged Fertil and Nicolas in the absence of their union activities. Despite Fertil and Nicolas's insistence that they had deposited fares in a separate slot in the machine, Allied did not attempt to verify their explanation or grant their requests to review the records. Allied argues that its audit was a sufficient investigation because Fertil and Nicolas's explanation of machine malfunction was implausible, but the Board was entitled to find otherwise. The audit compared the fares that should have been collected to the fares validated by the fare collection machines, and Fertil and Nicolas's explanation could have accounted for the discrepancy in their deposits. Although no other employee offered that excuse, the audit showed that 77 of the 120 drivers at Allied had fare discrepancies and Allied had spoken with only 10 of them about the discrepancies. Some of the other 67 drivers could have experienced problems with the fare collection machine but not reported them.

Moreover, Rowe and the other managers failed to inform Fertil and Nicolas that they refused to conduct an investigation. Rowe instead informed them that he would continue to investigate the matter during their suspensions, but Allied did

14

not in fact investigate further. Allied turned the matter over to the police, who brought no charges. That Allied failed to conduct the promised investigation undermines its purported legitimate reason for discharging Fertil and Nicolas.

The evidence that Allied treated Fertil and Nicolas dissimilarly from Desir and Etienne also weakens Allied's position. *See NLRB v. Dynatron/Bondo Corp.*, 176 F.3d 1310, 1321 (11th Cir. 1999). Before the union election, Allied confronted Desir and Etienne about fare delinquencies. Rowe permitted Desir and Etienne, unlike Fertil and Nicolas, to continue working while Rowe conducted an investigation. The dissenting Board member reasoned that Desir and Etienne were not similarly situated because Desir and Etienne asserted that they had submitted the fares to their supervisor, an allegation that Allied may have taken more seriously. Although the employees' different explanations may have called for different investigations, that the employees offered different excuses does not explain why some were permitted to work during the investigation and others were suspended pending a promised but nonexistent investigation.

Allied also argues—and the dissenting Board member and administrative law judge agreed—that it treated Fertil and Nicolas differently from Desir and Etienne because Desir and Etienne repaid what they owed, but substantial evidence supports the finding by the Board that Fertil and Nicolas were not given an adequate opportunity to pay the fare shortage. Desir and Etienne initially had

refused to pay. Rowe told them he would investigate the matter and they would be responsible for paying if, after the investigation, he determined they had not turned in fares. Fertil and Nicolas testified that they agreed to pay whatever amounts Allied could substantiate with documentation, but Allied did not follow up to provide the requested documents. Fertil agreed to pay the $7 for which Allied provided documentation. Nicolas testified that, although he continued to deny any fare shortage, he offered to pay the missing fares to keep his job. He testified that, in his meeting with Rowe and other managers, they did not arrange a date for him to pay for the missing fares because Rowe stated that he would continue investigating. Rowe and Diandre Hernandez, one of the managers who met with Nicolas to discuss the audit, testified that Nicolas agreed to pay the deficiency that Friday but did not return. Given these conflicting accounts, the Board could reasonably infer that Nicolas and Fertil were not given an opportunity to pay comparable to the opportunity afforded other employees. *See Gimrock Constr.,* 247 F.3d at 1310–11 (explaining that the Board can draw a different inference from the facts without disturbing the administrative law judge's credibility determinations). Allied treated Fertil and Nicolas differently from Desir and Etienne by requiring them to pay the missing fares before it conducted an investigation and by suspending them when they refused. Substantial evidence supports the finding that Allied failed to rebut the prima facie case of antiunion motivation.

16

The Board also ruled that Allied committed other violations of section 8(a)(1) by illegally interfering with its employees' union activities. 29 U.S.C. § 158(a)(1). Allied did not challenge that ruling in its initial brief, but it argued in its reply brief that insufficient evidence supported the finding that Rowe engaged in surveillance of a union meeting. Arguments made for the first time in the reply brief, however, are forfeited. *See Jones v. Sec'y, Dep't of Corrs.*, 607 F.3d 1346, 1353–54 (11th Cir. 2010). Accordingly, we enforce the order of the Board in its entirety.

## IV. CONCLUSION

We **GRANT** the petition for enforcement.