PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 96-6776

---

NLRB Nos.   11-CA-14332   11-CA-14543
            11-CA-14359   11-CA-14538

BE & K CONSTRUCTION COMPANY,

Petitioner-Cross-Respondent,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent-Cross-Petitioner.

---

Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board (Alabama Case)

**(October 27, 1997)**

Before BIRCH, Circuit Judge, FAY, Senior Circuit Judge, and COHILL*, Senior District Judge.

PER CURIAM:

---

*Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

In this labor case, BE&K Construction Company ("BE&K") petitions for review and the National Labor Relations Board ("Board) cross-petitions for enforcement of an order of the Board[1], which adopted with modification the findings, rulings, and conclusions of the Administrative Law Judge (ALJ) that BE&K had violated sections 8(a)(3)[2] and 8(a)(1)[3] of the National Labor Relations Act (the "Act"). BE&K asks this court to vacate the Board's modified order, arguing that the ALJ's and the Board's finding of unlawful anti-union animus is not supported by substantial evidence and is contrary to existing Board and case law. The Board cross-petitions for enforcement of its order. We conclude that the section 8(a)(1) and 8(a)(3) violations found by the ALJ and the Board are not supported by substantial evidence. Accordingly, we deny enforcement.

## I.  Background

BE&K is a general contractor engaged in construction at various sites throughout the United States, including a job site at

---

[1]The decision and order appear at 321 N.L.R.B. 561 (1996).

[2]Section 8(a)(3), 29 U.S.C. § 158(a)(3), provides that:
(a)  It shall be an unfair labor practice for an employer –
   . . . (3)by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .

[3]Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), makes it an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of their rights, inter alia, to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection.

a lumber mill operated by Champion International in the town of Canton, North Carolina. Operating under a merit shop policy, BE&K hires both independent craft workers and union-affiliated craft workers and is not a signatory to any collective bargaining agreement with any labor organization. BE&K, through company president T.C. Kennedy, has explained at some length the nature of its merit shop policy in its "Foremen's Informational Manual," describing the role and duties of the foreman at a construction site.[4]

---

[4]Because the issues in this case hinge on the language of the manual and the natural inferences that can be drawn from it, we quote the critical language of the manual here:

On our merit shop projects, the entire work force, from laborer to project manager, works as a team, without third party interference. Their loyalties are to the project and **BE&K**. . . .

**BE&K** was founded on the idea that we will hire our employees, promote our employees, and treat our employees on the basis of merit and skill. Our employees need not look to some outsider to solve our problems; rather an employee has the right to talk to the foreman and the company about any work problem. . . .

. . . Unions are businesses and need money to operate. Since companies are prohibited by law from paying unions any money, the only place they can get it is from the employees. In order to persuade employees that they are getting something for their money, the unions must stir up discontent and divide the employees and management. . . .

. . . I mention the problems caused by unions to you, because you, as the management on the project for **BE&K**, should be aware of this company's position and understand why the company has taken the position. Also the company expects you to implement this policy. . . .

. . . You may ask yourself what you can do. First of all, you can sincerely implement the company's merit shop policy and show your own loyalty to **BE&K** You should constantly keep the lines of communication with employees open and do not hesitate to answer their questions concerning company policies and benefits, and questions about unions.

. . . One of the problems in trying to operate a Merit Shop is that we must always be on the lookout for unions attempting to

3

The charges in this case relate to the hiring practices of BE&K for a major modernization project at the Champion mill in Canton. In the fall of 1990, BE&K began hiring employees, including electricians, pipe welders, and pipefitters, to work on the modernization of the Champion mill. During an eight month period, BE&K received approximately 14,000 applications for approximately 3,500 to 4,000 openings on the Canton project. BE&K conducted no interviews during the hiring process; all of the hiring decisions were based solely on the written job applications submitted to the company. Personnel Manager Brenda Criddle, who reviewed the applications, was in charge of the hiring of hourly employees for the Canton project.[5] Pursuant to company policy,

---

organize a project.

. . . I do want to mention something basic about a union campaign and what management cannot do. The National Labor Relations Act guarantees every employee the right to belong to a union or to refuse to belong to a union, and management is prohibited from interfering with that right. You cannot ask an employee if he is in a union or if he is in favor of a union. That is his business and it is protected by law.

. . .

. . . If you ever detect any union activity on your project, I want you to call me immediately so we can get expert help and advice at the earliest possible moment. (emphasis in original).

[5]BE&K had in place certain preferences Criddle followed in deciding who to hire for the Canton project, and Criddle also drew on her own experiences to establish the preference system. First, BE&K had a policy of giving preferential hiring to persons who had worked for BE&K in the past. Second, Criddle targeted applicants with experience in the particular mill or plant where the employee would be working. A preference was also given by Criddle for applicants who had worked for certain contractors who were held in high regard in the construction industry. As a personal choice, Criddle preferred to hire persons recently discharged from the military or with prior military experience. Finally, for the Canton project, Ms. Criddle sought to hire applicants from North Carolina, South Carolina, and Tennessee, because Champion requested

4

prospective employees were required to apply individually, rather than with a group, and in person.  As such, BE&K rejected by letter the "batched" applications sent to the company by the local International Brotherhood of Electrical Workers ("IBEW") and the local United Association of Plumbers and Pipefitters ("Plumbers Union").[6]  Such "batched" applications consisted of a letter by the union business agent enclosing a group of applications.

The section 8(a)1 and 8(a)(3) charges at issue here stem not from the rejection by BE&K of the "batched" applications, but from the alleged discriminatory hiring practices of BE&K in failing to consider for hire ten applicants who made clear on their applications their union affiliations,[7] and by refusing to hire three of these ten for positions for which they were qualified. [8] The ALJ and the Board determined that section 8(a)(3) and 8(a)(1) violations did, in fact, occur, and ordered a remedy which would attempt to make the discriminatees whole.  BE&K petitions this

that BE&K attempt to hire applicants from the area.

[6]The letters to the two unions used much the same language and articulated much the same sentiments as the passages quoted in footnote 4 of this opinion from the "Foreman's Informational Manual".  In addition to informing the unions of the merit shop status of the company, the letters informed the unions that such mass applications were contrary to BE&K policy and would not be accepted.

[7]Each of the ten applicants made clear his union affiliation by either mentioning union membership, listing a union as a past employer, identifying a union business agent as a reference, or listing "union organizer" as a special skill.

[8]The ten applicants at issue applied for three open spots, with nine of the applicants applying for two electrician positions, and with one applicant (James Loudermilk) for one pipe fitter position.

court to set aside this order and the Board cross-petitions for enforcement of this order.

## II. Discussion

BE&K petitions that this court set aside the order of the Board, arguing that the finding of discriminatory hiring practices with regard to the ten applicants is not supported by substantial evidence in this record. As such, there is no proper basis for the 8(a)(3) and 8(a)(1) violations. We agree with the petitioner.

While we must give proper deference to the orders of the Board, this court will not simply act as its enforcement arm. See Ona Corp. v. NLRB, 729 F.2d 713, 719 (1984). "It is our responsibility to examine carefully both the Board's findings and its reasoning, to assure that the Board has considered the factors which are relevant to its choice of remedy and has chosen a remedy that effectuates the purposes of the Act." Id. Given the special expertise of the Board in the field of labor relations, we will accept the Board's factual determinations and reasonable inferences derived from these factual determinations if they are supported by substantial evidence on the record considered as a whole. See Weather Tamer, Inc. v. NLRB, 676 F.2d 483, 487 (11th Cir. 1982); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 491 (1951). "Substantial evidence is more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Florida Steel Corp. v. NLRB, 587 F.2d 735, 745 (5th Cir. 1979)(citations omitted).

After careful review of the record, and after close analysis

6

of the order of the Board and the opinion of the ALJ, we find the record devoid of substantial evidence which might support the 8(a)(1) and 8(a)(3) charges lodged against BE&K. The record makes abundantly clear that the primary, and perhaps sole, evidence of anti-union animus on the part of BE&K was inferred by the Board from the lawful and protected expressions of BE&K in its foreman's manual and in its letters rejecting the "batched" application submitted by the IBEW and the Plumbers' Union.[9]

The Board, in agreement with the ALJ, found that BE&K violated sections 8(a)(3) and 8(a)(1) of the Act by refusing to consider for hire ten qualified job applicants who made their union affiliations clear on their job applications, and by refusing to hire three of those individuals. In order for the Board to establish a prima facie case for discriminatory refusal to hire, the Board must prove that a substantial or motivating factor in the company's rejection of the applicant was the applicant's union affiliation. See Wright Line, a Div. of Wright Line, Inc., 251 N.L.R.B. 1083 (1980), enfd., 662 F.2d 89 (1st Cir. 1981), and approved by the Supreme Court in NLRB v. Transp. Management Corp., 462 U.S. 393 (1983). In doing so, the Board must establish that the employer harbored animus

---

[9]We find significant that the hiring here occurred on such a large scale. In processing 14,000 applications for between 3,500 and 4,000 positions, BE&K turned away approximately 75% of all applicants including applicants with union backgrounds and applicants with no union affiliations. Further, the finding of anti-union animus by the Board and ALJ is undercut by the ALJ's determination that, in fact, individuals with union affiliations were hired and that there was no direct evidence BE&K "actively screened out or would otherwise refuse those with union credentials." 321 N.L.R.B. 561 (1996).

toward the applicant because of his or her union affiliation. <u>See</u> <u>Purolator Armored, Inc. v. NLRB</u>, 764 F.2d 1423, 1429 (11th Cir. 1985). We find that in the proceedings before the ALJ and before the Board, the NLRB failed to establish a prima facie case of discriminatory refusal to hire, where the evidence relied on by the NLRB to prove the crucial element of animus consisted of nothing more than the lawful, noncoercive statements by BE&K of BE&K's merit shop policy.[10]

When BE&K communicated its opinion regarding the advantages of its merit shop status, and when BE&K spoke of its desire to keep unions from successfully organizing its construction projects, it was exercising its rights of employer expression, guaranteed by section 8(c) of the National Labor Relations Act and by the First Amendment to the Constitution. Section 8(c) unequivocally provides:

> The expressing of any views, arguments, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, *shall not constitute or be evidence of an unfair labor practice* under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

---

[10]The Board, in its Order, also refers to past labor violations of BE&K to infer anti-union animus. We find that such an inference is unwarranted. The most recent misconduct relied upon by the Board occurred more than twelve years ago and occurred at a different site and involved different decision makers. Given that there is no evidence linking such past transgressions to any present anti-union animus of BE&K, we find the past transgressions too remote in time to be relevant to this dispute. <u>See</u> <u>Bill Fox Chevrolet, Inc.</u>, 270 N.L.R.B. 568 (1984)(finding that <u>recent</u> past misconduct may be relevant to an employer's anti-union animus).

8

29 U.S.C. § 158(c)(emphasis added). The Supreme Court, in NLRB v. Gissel Packing Co., 395 U.S. 575, 617 (1969), stated that section 8(c) "merely implements the First Amendment." See Florida Steel, 587 F.2d at 752. The dissemination by BE&K of its foreman's manual to its foremen and the distribution of the letters to the IBEW and the Plumbers' Union were expressions by BE&K of its views and opinions regarding the virtues of its merit shop policy and of BE&K's desire to strictly adhere to that policy. Neither the manual nor the letters were coercive; neither contained threats of reprisal or force or promises of benefit. This statute, section 8(c), clearly states that such language by the employer "shall not constitute or be evidence of an unfair labor practice." In inferring anti-union animus from the lawful communications by BE&K of its merit shop policy, the Board violated the express and mandatory provisions of the National Labor Relations Act. See Florida Steel, 587 F.2d at 752.

We do not doubt that BE&K desires to keep its workplace union-free. This is the very essence of its merit shop policy. But we will not allow the Board to punish an employer simply because that employer is anti-union. "It is fundamental that the Board has no authority to punish a company because it is against a union. Any company has a perfect right to be opposed to a union, and such opposition is not an unfair labor practice." Florida Steel, 587 F.2d at 753. "A finding of unlawful motivation cannot be based solely on the anti-union stance of an employer . . . ." Weather Tamer, 676 F.2d at 492. Given that there is no evidence of anti-

union animus in the record other than BE&K's lawful expressions of its anti-union stance, we hold that no substantial evidence exists to support the Board's finding that BE&K participated in discriminatory hiring practices in violation of Sections 8(a)(3) and 8(a)(1) of the Act. Accordingly, the remedy proposed by the Board which relates to such a finding will not be enforced. ENFORCEMENT DENIED.